WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David Picht, | ) | No. cv-07-02034-PHX-ROS |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) | |
| Peoria Unified School *District* No. 11 of Maricopa County, et al., | ) ) ) | |
| Defendant. | ) ) | |

Before the Court is Defendants' Motion for Summary Judgement. (Doc. 44.) For the reasons stated below, Defendants' Motion will be granted.

## I. BACKGROUND

Plaintiff David Picht alleges that administrators in Peoria Unified School District No. 11 ("Peoria Unified") have targeted Plaintiff for retaliation ever since he supported the civil rights complaint of a co-worker in 2001. (Doc. 49 at 2-3.) Plaintiff has worked for Peoria Unified as an Assistant Principle since the 2000-2001 school year under a series of renewable one-year contracts. (Doc. 44 at 3:3.) On April 13, 2007, Peoria Unified notified Plaintiff that his contract would not be renewed for the 2007-2008 school year. (Doc. 46 at 2:13-14.)

1 Plaintiff protested that the non-renewal violated A.R.S. § 15-503(d), which mandates a
2 timetable and procedure for such non-renewals, and in response Peoria Unified rescinded the
3 decision. (Id. at 2:19-21.) On June 11, 2007, Plaintiff filed a Notice of Claim against Peoria
4 Unified (Doc. 46 Ex. 5) pursuant to A.R.S. § 12-821.01, which requires such a notice before
5 any state law claims can be brought against a public entity or employee. On June 14, 2007,
6 Plaintiff was informed his contract would be renewed. (Doc. 45 at 2:22-23.)

Plaintiff did not return to his duties at the school he was assigned to, but instead requested assignment to a different school. (See id. at 2:22-3:8.) While this request was pending, Plaintiff was assigned to do typing and clerical work for 17 days at an administrative center. (Id. at 3:9-18.) Plaintiff was offered a new assignment on August 10, 2007, which he accepted and is satisfied with. (Id. at 3:4-8.)

On September 27, 2007 Plaintiff filed suit in the Superior Court of the State of Arizona, alleging federal civil rights claims and state law claims arising from the events surrounding the dispute over renewal of his contract. (Doc. 1-3.) Defendants removed the case to this court under 28 U.S.C. § 1441 *et seq.* based on this court's original jurisdiction under 28 U.S.C. § 1331.

After discovery, Defendants filed for summary judgment, arguing Plaintiff's claims are time-barred, fail to comply with the notice provisions of A.R.S. § 12-821, and are without legal or factual basis. (Doc. 44.)

## II. STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In

addition, the dispute must be genuine; that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party; "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255. Therefore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. Id.

### III. ANALYSIS

#### A. Federal Question Claims

1. Plaintiff Was Not Deprived Of A Right Protected Under 42 U.S.C. § 1983.

Plaintiff argues that an adverse employment action taken against him by Peoria Unified administrators in accordance with Peoria Unified policies deprived him of interests protected by 42 U.S.C. § 1983. (Doc. 1-3 at 13:49-54.)

Defendants assert that Plaintiff's § 1983 claim is time-barred by Arizona's two-year statute of limitations for personal injury actions. (Doc. 44 at 6:1-4, 12:16). Plaintiff's § 1983 claim is based on the non-renewal of his employment contract in April 2007. (Doc. 1-3 at 13.) Defendants do not explain how a two-year limitation period bars an action commenced 6 months after the claim accrued, and therefore Defendants are not entitled to summary judgment on this basis.

Next, Defendants argue Plaintiff has not been denied an interest protected under 42 U.S.C. § 1983. (Doc. 44 at 12:16-13-11.) 42 U.S.C. § 1983 provides a cause of action for the violation under color of law of property or liberty interests protected by the Fourteenth Amendment. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569

1  (1972).  To be a protected property interest, the claimant must have a legal entitlement to
2  the interest, and not just a mere desire.  Id. at 579.  And while the scope of protected
3  liberty interests are not precisely defined, declining to rehire a claimant is not actionable
4  under § 1983 when the employer has not imposed on the claimant "a stigma or other
5  disability that foreclosed his freedom to take advantage of other employment
6  opportunities." Id. at 573-74.

Arizona law does not provide Plaintiff with a protected property interest in continued employment beyond the term of his contract.  Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors, 909 P.2d 486, 496 (Ariz. App. 1995).  So if Plaintiff has a claim under § 1983, it must be for violation of a liberty interest.

Defendants note correctly that since an employee can recover for deprivation of a liberty interest under § 1983 only when the employee is both terminated and suffers impairment of his reputation for honesty and morality, then if Plaintiff experienced neither employment termination nor such reputational impairment, he cannot recover. (Doc. 44 at 13:5-11 (citing Roth, 408 U.S. at 573).)  Plaintiff acknowledges in his deposition that Defendants have done nothing to impugn his honesty or morality. (Doc. 45-3 at 32:1-33:15.)  Plaintiff was not terminated, and does not allege Defendants have foreclosed his freedom to take advantage of other employment opportunities. Furthermore, Plaintiff does not attempt to rebut Defendants' arguments regarding Plaintiff's § 1983 claims.  (See Doc. 49.)

Accordingly, on the undisputed facts, Plaintiff has not been deprived of a liberty interest or a property interest protected under § 1983, and Defendants are entitled to summary judgment on Plaintiff's § 1983 claim.

### 2. Plaintiff Has Failed To State A Claim Under 42 U.S.C. § 1981.

Plaintiff argues that the actions surrounding the non-renewal of his contract are retaliation for his support of a co-worker's discrimination complaint in 2001-2003, and are therefore actionable under 42. U.S.C. § 1981.  (Doc. 1-3 at 12:25-13:8.)

| | |
|---|---|
| 1 | Defendants assert that Plaintiff's § 1981 claims are time-barred. Claims for |
| 2 | discrimination in employment based on race arises under the 1991 amendment to § 1981, |
| 3 | and the statute of limitations for such claims is therefore four years under 28 U.S.C. § |
| 4 | 1658. Jones v. R.R. Donnelley & Sons, 541 U.S. 369, 382-83 (2004). Retaliation claims |
| 5 | arise from the same 1991 amendment, CBOCS West Inc. v. Humphries, 128 S. Ct. 1951, |
| 6 | 1957-58 (2008), and therefore the statute of limitations for retaliation claims is also four |
| 7 | years. Baker v. Birmingham Bd. of Educ., 531 F.3d 1336, 1338 (11th Cir. 2008). Each |
| 8 | discrete retaliatory act starts the clock on the statute of limitations with respect to that act. |
| 9 | Nat'l R.R. Passenger Corp. V. Morgan, 536 U.S. 101, 113 (2002). |
| 10 | Defendants argue that Plaintiffs § 1981 claims are time-barred because both |
| 11 | Plaintiff's initial belief that he was targeted for retaliation, and the alleged impetus for |
| 12 | that retaliation – Plaintiff's protected acts supporting a co-worker in a civil rights action[1]– |
| 13 | occurred over four years ago. (Doc. 44 at 12:3-7.) However, the limitation period begins |
| 14 | to run on the date of the alleged retaliatory act, not the date of the protected act. Morgan, |
| 15 | 536 U.S. at 113. Plaintiff alleges that his failure to gain a promotion in 2001 was due to |
| 16 | unlawful retaliation, but the limitation period on a claim for that act has run. Plaintiff also |
| 17 | alleges that employment actions taken towards him in 2007 were retaliatory, and claims |
| 18 | based on 2007 actions are within the four year limitation period. Therefore, Plaintiff's § |
| 19 | 1981 claims against Defendants based on actions in 2007 are not time-barred. |
| 20 | Defendants also argue that § 1981 does not apply to Plaintiff because he is white. |
| 21 | (Doc. 44 at 12:13-15.) 42 U.S.C. § 1981 protects the right to make and enforce contracts, |
| 22 | including employment contracts, against impairment on racial grounds. CBOCS, 128 S. |
| 23 | Ct. at 1955-57. Among other things, § 1981 creates a cause of action for retaliatory acts |
| 24 | taken in response to supporting the civil rights of others who are protected by § 1981. Id. |
| 25 | at 1956-58. Although the court did not explicitly extend protection against retaliation to |

---

[1] White v. Peoria Unified Sch., et al., No. 2:01-cv-01699-SRB (D. Ariz. Apr. 29, 2004)(not published on Lexis or Westlaw)(dismissing with prejudice), filed Sep. 10, 2001.

- 5 -

people who are not members of a protected class, it did hold that such protection is based on the claimant's conduct rather than the claimant's race. Id. at 1960.

Given this, Defendants' failure to cite any authority for the proposition that a white person's conduct in support of the contract rights of minorities is not protected against retaliation under § 1981 makes their argument unpersuasive. In light of the favorable treatment given to Sullivan v. Little Hunting Park, Inc., 396 U.S. 229 (1969) in CBOCS, such claims might be available to those who are not themselves members of a racial minority. See 128 S.Ct. at 1955-56. As noted in CBOCS, Sullivan was a white man who was allowed to bring an action under 42 U.S.C. § 1982 because of retaliation Sullivan suffered for leasing and selling property to a black man. Id. at 1955. While § 1981 protects racial minorities' right to contract against racial discrimination, § 1982 protects racial minorities' property rights. Id. Because the Supreme Court has "long construed § 1981 and § 1982 similarly," id., § 1981 might therefore also protect a white person from retaliation for supporting another's rights under § 1981. In fact, although the Ninth Circuit has not ruled on the issue, many circuits have held this to be true. See Humphries v. CBOCS West, Inc., 474 F.3d 387, 402 (7th Cir. 2007) (agreeing with seven other circuits that § 1981 protected whites from retaliation for their support of minorities who make claims under § 1981). But because dismissal of this claim is appropriate on other grounds, whether to adopt the holding of Humphries need not be decided at this time.

Plaintiff's plea fails because Defendants are all state actors. In 1989, the Supreme Court held that § 1981 did not provide a cause of action against state actors. Jett v. Dallas Indep. School Dist., 491 U.S. 701, 729 (1989). Congress amended the statute in 1991, Pub. L. 102-166 § 101, and as amended, § 1981 allows claims against state actors if it is alleged that the injury resulted from an official policy or custom. Federation of African American Contractors. v. City of Oakland, 96 F.3d 1204, 1216 (9th Cir. Cal. 1996).

Plaintiff has not alleged that his § 1981 claims resulted from official policy or custom, as is required by African American Contractors. Id. Plaintiff instead alleges that Erb was responsible for the retaliation, and that Erb was able to retaliate because of

negligent supervision by Peoria Unified. (Doc. 1-3 at 13:1-3, 10:1-5) Clearly Plaintiff is not alleging that the retaliation was the result of Peoria Unified official policy or custom. Because Plaintiff does not allege his injury arose from official policy or custom, and alleges no facts in support of such an allegation, his complaint does not state a claim for which relief can be granted under § 1981.

As a result, Plaintiff's 42 U.S.C. § 1981 claim must be dismissed.

### B. State Law Claims

#### 1. Plaintiff has Provided The Necessary Notice of Claim.

Defendants claim Plaintiff's state law claims are precluded because Plaintiff did not file a factually-adequate Notice of Claim as required under A.R.S. § 12-821.01. (Doc. 44 at 7:2-15).

A.R.S. § 12-821.01 "permits [a state law] action against a public entity to proceed only if a claimant files a notice of claim that includes (1) facts sufficient to permit the public entity to understand the basis upon which liability is claimed, (2) a specific amount for which the claim can be settled, and (3) the facts supporting the amount claimed." Backus v. State, 203 P.3d 499, 502 (Ariz. 2009). The notice of claim must be filed within 180 days of the cause accruing, which might not allow claimants a fair opportunity to meet a factual-disclosure sufficiency standard. Id. at 504. Such a sufficiency standard would therefore create a high risk of forfeiture for legitimate claims, and furthermore would not be consistent with the statutory text. Id. Accordingly, "courts should not scrutinize the claimant's description of facts to determine the 'sufficiency' of the factual disclosure." Id. at 505.

Defendants contend that Plaintiff's notice, although timely, was ineffective as to at least some claims because it did not provide adequate facts to evaluate Plaintiff's demand. (Doc. 44 at 7:8-11). Because of the Arizona Supreme Court's decision in Backus, that argument is no longer available to Defendants: the adequacy of the notice's supporting facts is not subject to judicial review. 203 P.3d at 504-5.

Defendants also argue Plaintiff only provided notice of claims arising from the

dispute over the non-renewal of Plaintiff's contract. (Doc. 44 at 7:2-7, 13-15). However, Defendants do not identify any specific claims as not arising from the non-renewal, and it is not facially obvious which claims Defendants have in mind. Therefore, this argument does not support dismissal of any of Plaintiff's claims.

For these reasons, Defendants have not demonstrated that A.R.S. § 12-821.01 entitles them to summary judgment on any of Plaintiff's state law claims.

### 2. Plaintiff's Contract for Employment Was Not Breached.

Plaintiff's complaint alleges that the improper non-renewal of his contract and the alleged retaliation he experienced after he filed his Notice of Claim amount to a breach of contract. Defendants assert that Plaintiff has received the full benefit of his 2006 employment contract and therefore cannot maintain an action for breach of contract. (Doc. 44 at 8:28-10:2.)

Plaintiff admits he received all the financial benefits he was entitled to under the contract (Doc. 45 at 4:12-13; Doc. 50 at 2:20-21) and does not directly respond to Defendants' assertion that there was no breach. However, Plaintiff argues that Peoria Unified policies are incorporated into Plaintiff's contract, citing Sulger v. Arizona Corporation Commission, 423 P.2d 145 (Ariz. App. 1967), and appears to argue that as a result, Defendants' violation of Peoria Unified policies breached that contract. (Doc. 49 at 3:18-22.) However, Sulger addressed whether a businessman whose permit had been revoked by a state agency had received due process of law. 423 P.2d at 150. Sulger does not address whether the state agency's misconduct amounted to a breach of any contract. Therefore, Sulger does not provide an issue for trial of Plaintiff's breach of contract claim.

The undisputed facts show that Plaintiff has received the full benefit of the bargain for his 2006 employment contract. Accordingly, Defendants are entitled to summary judgment on the breach of contract claim.

### 3. The Implied Covenant of Good Faith and Fair Dealing Was Not Breached.

Plaintiff alleges that the decision to not renew his 2006 employment contract and

1  ensuing acts by Defendants violated the contract's implied covenant of good faith and fair
2  dealing. (Doc. 1-3 at 12). Defendants argue that since Plaintiff received the full benefit
3  of the 2006 employment contract, the covenant was not breached. (Doc. 44 at 10:6-8.)
4    "Arizona law implies a covenant of good faith and fair dealings in every contract,"
5  which "prohibits a party from doing anything to prevent other parties . . . from receiving
6  the benefits and entitlements of the agreement." <u>Wells Fargo Bank v. Arizona Laborers</u>
7  <u>Local No. 395 Pension Trust Fund</u>, 38 P.3d 12, 28 (Ariz. 2002). The covenant can be
8  breached even if the express terms of the contract are not breached, when an injury arises
9  from one party abusing their superior bargaining power. <u>Id.</u> at 29. Action for breach of
10  the covenant may sound in contract or in tort, but sustaining a tort claim requires the
11  plaintiff to allege and prove a "special relationship between the parties arising from
12  elements of the public interest, adhesion, of fiduciary responsibility." <u>Id.</u>
13    Plaintiff does not specifically make a claim in tort, and does not allege the
14  necessary "special relationship" to support an action in tort. Therefore, Plaintiff cannot
15  seek damages other than contract damages.
16    Also, Plaintiff neither alleges that Peoria Unified has superior bargaining power
17  and has abused it, nor alleges facts from which that could be inferred. Therefore, Plaintiff
18  can recover for breach of the implied covenant only if the express terms of the contract
19  have been breached. The uncontested facts establish that Plaintiff has received all the
20  expressed benefits of the 2006 employment contract; the procedures by which the
21  decision to renew the contract were to be made are not express terms of the contract. But
22  Plaintiff might be viewed as arguing that under <u>Sulger</u>, 423 P.2d 145, the contract
23  incorporates an implicit duty of an employer to comply with the renewal procedures set
24  forth in state law and Peoria Unified policies. (Doc. 49 at 3:18-22.) As discussed in the
25  analysis of the breach of contract claim, <u>Sulger</u> does not support such a theory.
26  Accordingly, Plaintiff has no contract damages to support an action on the contract for
27  breach of the implied covenant.
28    Since Plaintiff cannot support a action in tort or in contract for breach of the

employment contract's implied covenant of good faith and fair dealing, Defendants are entitled to summary judgment on this claim.

### 4. Plaintiff Does Not Have A Claim of Intentional Infliction of Emotional Distress.

Plaintiff alleges Defendants have treated Plaintiff outrageously and thereby intentionally inflicted emotional distress. (Doc. 49 at 5:1-9.)

The tort of intentional infliction of emotional distress has three elements: first, the defendant's conduct must be extreme and outrageous; second, the defendant must either intend or recklessly disregard the near certainty that emotional distress will result from the conduct; and third, the conduct must actually cause severe emotional distress. Ford v. Revlon, Inc., 734 P.2d 580, 585 (Ariz. 1987). Whether the conduct is "extreme and outrageous" enough to state a claim of relief is a question for the court. Cluff v. Farmers Ins. Exchange, 460 P.2d 666, 668 (Ariz. App. 1969). The standard for "extreme and outrageous" conduct is high: it must be "beyond all possible bounds of decency" and "atrocious and utterly intolerable in a civilized community." Id.

For example, a school administrator alleged that her employer intentionally inflicted emotional distress by not properly renewing her contract under A.R.S. § 15-503, reducing her compensation during the term of her contract, slandering and ridiculing her, unfairly singling her out for discipline on performance grounds, and threatening her with termination. Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors, 909 P.2d 486, 494-95 (Ariz. App. 1995). Such conduct was found not "extreme and outrageous" enough to support the administrator's claim. Id.

Defendants argue that none of their actions were sufficiently outrageous to support Plaintiff's claim. (Doc. 44 at 11:9-16.) The conduct upon which Plaintiff rests his claim consists of not promoting Plaintiff, deciding to not renew Plaintiff's contract by procedures other than those mandated by A.R.S. § 15-503, temporarily assigning Plaintiff duties that while proper and non-trivial where beneath his position, and attempting to resolve Plaintiff's claims as part of negotiating his new employment contract. Plaintiff cites no precedent establishing that any of the conduct complained of is "extreme and

- 10 -

1  outrageous." The alleged conduct is not unlawful and is very similar to–and in fact,
2  markedly less outrageous than–the conduct complained of in <u>Wallace</u>. 909 P.2d at 494-
3  95. Therefore, the conduct Plaintiff complains of is not extreme and outrageous enough
4  to support a claim for intentional infliction of emotional distress.

5     5. Plaintiff Does Not Have A Claim of Negligent Infliction of Emotional Distress.

6     Plaintiff alleges Defendants' negligence caused Plaintiff significant emotional
7  distress. (Doc. 1-3 at 12:1-6.)

8     In Arizona, negligent infliction of emotional distress occurs when 1) the claimant
9  witnesses the serious injury or death of a closely related person caused by the defendant,
10 2) the claimant was simultaneously within the "zone of danger" of physical harm created
11 by defendant's actions, and 3) as a result, the claimant suffers mental anguish that
12 manifests as physical injury. <u>Pierce v. Casas Adobes Baptist Church</u>, 782 P.2d 1162,
13 1165 (Ariz. 1989). Arizona also recognizes a claim for negligent infliction of emotional
14 distress when the distress arises from some types of physical injury to the claimant
15 themself. See <u>Monaco v. Healthpartners of S. Arizona</u>, 995 P.2d 735 (Ariz. App. 1999).
16 (Holding negligent injection of radioactive material into claimant sufficient to support a
17 claim for negligent infliction of emotional distress.)

18     Defendants argue that Plaintiff did not experience the immediate danger of
19 physical injury necessary to support a claim for negligent infliction of emotional distress.
20 (Doc. 44 at 11:23-27). The uncontested facts show that Plaintiff did not witness an injury
21 to a closely related person, and that Plaintiff's emotional distress did not arise from a
22 physical injury to Plaintiff himself. Plaintiff therefore cannot prove an essential element
23 of his negligent infliction of emotional distress claim.

24     Accordingly, Defendants are entitled to summary judgement on this claim.

25     6. Plaintiff's Negligent Supervision Claims have No Underlying Tort.

26     Plaintiff alleges that Peoria Unified was negligent in its supervision of Defendant
27 Erb, and is therefore liable for Erb's wrongful conduct. (Doc. 1-3 at 10:1-12.)

28     Arizona follows the general rule for negligent supervision found in the

Restatement (Second) of Agency § 213.  Kassman v. Busfield Enterprises, 639 P.2d 353, 357 (Ariz. App. 1981).  Liability is based on the negligence of the employer , id., but requires that "a court . . . first find that the employee committed a tort."  Kuehn v. Stanley, 91 P.3d 346, 352 (Ariz. App. 2004).

Plaintiff bases his negligent supervision claim on intentional infliction of emotional distress by Erb.  (See Doc. 49 at 5:12-19.)  However, as discussed supra, Plaintiff's intentional infliction of emotional distress claim fails.  Since Plaintiff's underlying tort claim fails, his claim for negligent supervision fails as a matter of law, and the question of whether Peoria Unified was negligent in its supervision of Erb need not be addressed.

Accordingly, Defendants are entitled to summary judgement on this claim.

### 7. Plaintiff's Has No Other Negligence Claims.

Plaintiff originally alleged that Defendants caused him physical, emotional and economic harm through their negligence.  However, Plaintiff has alleged no negligent acts beyond those in his claims of negligent infliction of emotional distress and negligent supervision, which have already been addressed.  Plaintiff therefore has no other negligence claims.

### 8. No Cause of Action Under A.R.S. § 15-503, School District Policy or Public Policy.

Plaintiff asserted a claim for damages for violations of A.R.S. § 15-503, Peoria Unified policies, and public policy that occurred during the events surrounding the non-renewal of Plaintiff's contract.  (Doc. 1-3 at  11:15-23.)

Defendants assert without citation or argument that no private cause of action for damages arise from § 15-503(d), and Plaintiff does not respond to that assertion.  The question seems to be one of first impression. When a federal court must determine a novel issue of state law, the court attempts to predict how the state's highest court would decide the issue.  Ariz. Electric Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir.1995).

Arizona courts will not interpret a law as eliminating an existing common-law action for damages absent explicit legislative intent to do so.  Hayes v. Continental

Insurance Co., 872 P.2d 668, 677 (Ariz. 1994). However, where no common-law claim exists, determining whether a statute implicitly creates a private right of action requires considering "the context of the statutes, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." Transamerica Financial Corp. v. Superior Court, 761 P.2d 1019, 1020 (Ariz. 1988). Whether the statute especially benefits the person seeking redress is a factor in the determination. Id. at 1021. A private cause of action has been implied when no other remedy for violation of the statute was available. Douglas v.Window Rock Consolidated Sch. Dist. No. 8, 78 P.3d 1065, 1069 (Ariz. App. 2003) But creation of a cause of action against a state actor does not always imply a private cause of action for damages. Guibault v. Pima County, 778 P.2d 1342, 1346 (Ariz. App. 1989).

Guibault concerned a violation of A.R.S. §§ 11-291 *et seq*., which requires counties to provide or pay for medical treatment to indigent patients. Id. at 1346. The plaintiffs in that case sought damages for permanent injuries suffered as a result of a wrongful denial of mandated benefits. Id. at 1343. However, nothing in the statute indicated that the legislature intended that the county be liable for consequential damages that might arise from a wrongful denial of those benefits. Id. at 1346. The claimant had a right to recover only payment for the benefits wrongfully denied, and not for the consequential damages arising from the denial. Id. This did not provide the claimant a complete remedy, but when creating a cause of action against a state actor, it is within the prerogative of the Arizona legislature to provide only a partial remedy. Id.

Because any alleged procedural defect in the non-renewal has been cured by renewal of the contract, the right to injunctive relief is not at issue, so the question is only whether § 15-503(d) provides a private right of action for damages.

The relevant part of § 15-503(d) reads:

> On or before May 15 the governing board shall offer a contract for the next school year to each certified administrator and certificated school psychologist who is in the last year of his contract unless, on or before April 15, the governing board, a member of the board acting on behalf of the board or the superintendent of the school district gives notice to the

- 13 -

> administrator or certificated school psychologist of the board's intention not to offer a new contract.

A.R.S. § 15-503(d). § 15-503(d) was incorporated into the statute in 1988. Laws 1988 Chap. 148 § 1, 1988 Ariz. Legis. Serv. 148 (West). No claim exists for violation of the procedures mandated by the statute under the common law. Nothing in the statute or the sparse legislative history of § 15-503(d) indicates an intent to create a private cause of action for damages.

Given the precedent of Guibault, an Arizona court is unlikely to find § 15-503(d) implies a private cause of action for damages. The statute in Guibault was obviously intended to especially benefit the plaintiff indigent patients, while § 15-503(d) might have been primarily intended to benefit the public by providing an orderly process for renewing the contracts of school district personnel. The likely harms that claimants might suffer from violation of the mandate of A.R.S. §§ 11-291 *et seq.* to provide medical care are far more severe than the harms likely to arise from violation of the procedures in § 15-503(d). Thus, since the Arizona court did not find a private cause of action for damages in A.R.S. §§ 11-291 *et seq.*, and given the lack of any indication that the legislature intended to create any private cause of action under § 15-503(d), there is no indication an Arizona court would find a private cause of action for damages under § 15-503(d). Accordingly, Plaintiff has no right of action for damages for alleged violation of A.R.S. § 15-503(d).

In addition to his claim under § 15-503(d), Plaintiff also asserts a private right of action arising from violation of "public policy." Defendants argue that Arizona does not recognize implied causes of actions arising out of public policy in employment actions, citing the Employment Protection Act ("EPA"), A.R.S. § 23-1501 *et seq*. (Doc. 44 at 14:1-10.) Defendants are correct: the EPA limits employment termination claims under state law to four specific circumstances, thus excluding violations of public or other policies not set forth in a statute. Galati v. America West Airlines, Inc., 69 P.3d 1011, 1013 (Ariz. App. 2003). Plaintiff did not respond to Defendants' argument.

While the EPA only addresses termination of employment, Taylor v. Graham

1  County Chamber of Commerce, 33 P.3d 518, 521 (Ariz. App. 2001), it is unreasonable to
2  believe that the Arizona legislature intended to allow claims related to the non-renewal of
3  an employment contract in circumstances where it bars claims related to the more serious
4  act of outright termination of employment.  It is clear that the Arizona legislature intended
5  to bar claims related to non-renewal of employment contracts that are grounded only in a
6  violation of school district policies or general "public policies."  Plaintiff therefore has no
7  private right of action for the violations of Peoria Unified policies or of public policy that
8  allegedly occurred as part of the non-renewal of Plaintiff's employment contract.
9  Since Plaintiff's claim to a private right of action under A.R.S. § 15-503, Peoria
10 Unified polices or public policy is without merit, Defendants are entitled to summary
11 judgment on this claim.
12 Accordingly,
13 **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 44) is
14 **GRANTED**.
15 **FURTHER ORDERED** that Plaintiff's Count Six (Doc. 1-3 at 12) for Violation
16 of Civil Rights under 42 U.S.C. § 1981 is **DISMISSED WITHOUT PREJUDICE**.
17 **FURTHER ORDERED** that Plaintiff's Count One (Doc. 1-3 at 9) for Negligence
18 Including Negligent Supervision is **DISMISSED WITH PREJUDICE**.
19 **FURTHER ORDERED** that Plaintiff's Count Two (Doc. 1-3 at 10) for Breach of
20 Contract is **DISMISSED WITH PREJUDICE**.
21 **FURTHER ORDERED** that Plaintiff's Count Three (Doc. 1-3 at 11) for
22 Violation of A.R.S. § 15-503 - District and Public Policies is **DISMISSED WITH**
23 **PREJUDICE**.
24 **FURTHER ORDERED** that Plaintiff's Count Four  (Doc. 1-3 at 11) for
25 Intentional and Negligent Infliction of Emotional Distress is **DISMISSED WITH**
26 **PREJUDICE**.
27 **FURTHER ORDERED** that Plaintiff's Count Five (Doc. 1-3 at 12) for Breach of
28 Covenant of Good Faith and Fair Dealing is **DISMISSED WITH PREJUDICE**.

**FURTHER ORDERED** that Plaintiff's Count Seven (Doc. 1-3 at 13) for Violation of Civil Rights under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.

DATED this 16th day of July, 2009.

_____
Roslyn O. Silver
United States District Judge